In the

# United States Court of Appeals
## For the Seventh Circuit

No. 24-1576

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

CLARENCE BONDS,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Indiana, South Bend Division.
No. 3:20-cr-00043-DRL-MGG-1 — **Damon R. Leichty**, *Judge.*

ARGUED SEPTEMBER 12, 2024 — DECIDED NOVEMBER 21, 2024

Before HAMILTON, SCUDDER, and LEE, *Circuit Judges.*

PER CURIAM. Clarence Bonds appeals the district court's
denial of his motion under 18 U.S.C. § 3582(c)(2) for a sen-
tence reduction based on Amendment 821 to the U.S. Sentenc-
ing Guidelines. On this aspect of the appeal, the panel is in
full agreement and affirms, as the district court acted well
within its discretion in denying Bonds's motion. But the panel
is not of one view on a second dimension of this appeal—
whether the Criminal Justice Act, 18 U.S.C. § 3006A,

authorized the appointment of appellate counsel to represent Bonds in his effort to challenge the district court's adverse ruling on his § 3582(c)(2) motion. Each member of the panel has prepared a separate opinion explaining his view on that question, including whether the question requires resolution in this appeal.

**I**

**A**

Clarence Bonds is serving a 71-month sentence for transporting a firearm in interstate commerce as a felon. See 18 U.S.C. § 924(b). In 2023 he invoked 18 U.S.C. § 3582(c)(2) and sought a reduced sentence based on Amendment 821 to the Sentencing Guidelines. By its terms, Amendment 821 applies retroactively and alters how so-called "status points" are used to calculate a defendant's criminal history category. For Bonds, Amendment 821 had the effect of reducing his criminal history category from IV to III and, in turn, his advisory Guidelines range from 57–71 months' to 46–57 months' imprisonment. Bonds asked the district court to reduce his sentence to account for his new criminal history category and accompanying advisory range modifications resulting from Amendment 821.

The district court denied the motion, recognizing the effects of Amendment 821 on the determination of Bonds's criminal history category and, by extension, the revised advisory range, but then declining as a matter of discretion to reduce his sentence. The court explained that a lesser sentence would not "adequately address the need for deterrence, incapacitation, and public protection, the overall serious nature of [his] offense, and his personal history and characteristics."

Among other concerns, the district court observed that Bonds's criminal career began at age eleven and came to include not only poor supervision history but also convictions for numerous violent crimes with firearms. These circumstances, the district court concluded, counseled against reducing Bonds's sentence.

Bonds now appeals that ruling.

B

We review the district court's denial of Bonds's § 3582(c)(2) motion only for abuse of discretion. See *United States v. Williams*, 93 F.4th 389, 392 (7th Cir. 2024).

Under § 3582(c)(2), courts must consider any relevant 28 U.S.C. § 3553(a) factor when determining whether to reduce a defendant's sentence. If the district court considered these factors and "adequately explain[ed] the chosen sentence," there is no abuse of discretion. *Chavez-Meza v. United States*, 585 U.S. 109, 115 (2018) (quoting *Gall v. United States*, 552 U.S. 38, 50 (2007)). The district court did so here. We see no abuse of discretion and affirm the court's denial of Bonds's motion on the merits.

II

The second issue before us arises under the Criminal Justice Act, 18 U.S.C. § 3006A, and more specifically, our decision to provisionally appoint Federal Defender Thomas Patton to represent Bonds in this appeal after his appointed counsel in the district court moved to withdraw and suggested that we appoint new counsel for Bonds. Recognizing uncertainty surrounding our authority to appoint counsel in § 3582(c) proceedings, we asked the parties to brief whether "§ 3006A, permits a court to appoint counsel at public expense—

whether in an individual case or through a general order—for defendants like Bonds who are seeking a reduction of their sentences under 18 U.S.C. § 3582, including motions based on retroactive amendments to the United States Sentencing Guidelines under § 3582(c)(2)." See Order, *United States v. Bonds*, No. 24-1576 (7th Cir. May 14, 2024), Dkt. No. 6. Compare *United States v. Foster*, 706 F.3d 887, 888 (7th Cir. 2013) (concluding that "[t]he Criminal Justice Act does not supply the necessary permission to pay a lawyer from the public fisc" in § 3582(c)(2) proceedings), with *United States v. Guerrero*, 946 F.3d 983, 985 (7th Cir. 2020) ("*Foster* holds that district courts are not required to appoint counsel [in § 3582(c)(2) proceedings], but it does not *prohibit* them from doing so.").

The panel finds itself divided on this question. In Judge Lee's view, given the particular circumstances of this case, the principle of judicial restraint counsels that we not reach the issue, because we can affirm the district court's denial of Bonds's § 3582(c)(2) motion on narrower grounds.

Judge Hamilton has doubts about whether the panel should address the merits, but explains why he believes the language of the Criminal Justice Act gives federal courts discretion to make such appointments, why that view is consistent with the purpose of the Act and with consistent practices of courts for decades, and why it is supported by congressional acquiescence in the practice. Judge Scudder believes it appropriate to resolve the merits question, and he would hold that the plain language of § 3006A does not authorize appointments of counsel in § 3582(c) proceedings.

Attached to this opinion are three separate opinions in which each judge explains his view.

AFFIRMED

LEE, *Circuit Judge*, concurring. The question of whether the Criminal Justice Act, 18 U.S.C. § 3006A, permits a court to appoint counsel for a defendant to pursue a post-judgment sentencing reduction motion under 18 U.S.C. § 3582(c)(2) is a difficult and consequential one. And my colleagues ably set forth the two opposing views. But, as the per curiam opinion demonstrates, the case before us can be decided on much narrower grounds. Thus, I believe that we should affirm the decision of the district court and not reach the vexing statutory question for several reasons.

First, we have repeatedly recognized that "in keeping with the notions of judicial restraint, federal courts should not reach out to resolve complex and controversial questions when a decision may be based on a narrower ground." *Allen v. Ferguson*, 791 F.2d 611, 615 (7th Cir. 1986); *see also Air Courier Conference of Am. v. Am. Postal Workers Union, AFL-CIO*, 498 U.S. 517, 531 (1991) (Stevens, J., concurring in the judgment) ("Faithful adherence to the doctrine of judicial restraint provides a fully adequate justification for deciding this case on the best and narrowest ground available."). This is true even when the question is one of statutory interpretation. *See United States v. UCB, Inc.*, 970 F.3d 835, 856 (7th Cir. 2020) (Scudder, J., concurring in the judgment). Here, the district court's decision can be decided on the merits (as we have done). We should leave questions regarding the relationship between the CJA and § 3582(c)(2) motions for a case "where the outcome hinge[s] on the answer." *Id*.

Second, I am concerned that any decision on the CJA question would be advisory in nature. *See Matlin v. Spin Master Corp.*, 979 F.3d 1177, 1181 (7th Cir. 2020) ("Article III's 'case or controversy' requirement prohibits federal courts

from issuing advisory opinions that do not affect the rights of the parties before the court.") (citing *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975)). Whichever way we decide, the outcome will have no material impact on Bonds or his counsel from the Federal Public Defender's Office. Bonds has already submitted his briefs on appeal, and his counsel has skillfully represented him at oral argument. I suppose that, because his appellate counsel was only provisionally appointed, a ruling that the CJA does not cover § 3582(c)(2) motions might preclude Bonds from benefiting from the services of court-appointed counsel when considering a motion for panel rehearing or rehearing *en banc* or a petition for *certiorari* before the Supreme Court. But this seems too tenuous a foundation upon which to build such a weighty decision.

Third, typically, we are reluctant to consider issues that parties have not raised before the district court. *See Consumer Fin. Prot. Bureau v. Townstone Fin., Inc.*, 107 F.4th 768, 777 (7th Cir. 2024) ("'It is the general rule, of course, that a federal appellate court does not consider an issue not passed upon below.'") (quoting *Singleton v. Wulff*, 428 U.S. 106, 120 (1976)). There are various reasons for this, not the least of which is the benefit we gain from the district judge's measured consideration of the contested issue. I recognize that the parties here were invited to brief the CJA issue (and both sides have performed their jobs admirably), and the principle of party presentation is not sacrosanct, but it is an important aspect of our "adversarial system of adjudication" that warrants due consideration. *United States v. Sineneng-Smith*, 590 U.S. 371, 375–76 (2020) (observing that "as a general rule, our system 'is designed around the premise that [parties represented by competent counsel] know what is best for them, and are responsible for advancing the facts and argument entitling

them to relief.'") (quoting *Castro v. United States*, 540 U.S. 375, 386 (2003) (Scalia, J., concurring in part and concurring in the judgment)). This principle seems particularly salient here, given the traditionally limited role the government plays when questions arise regarding a defendant's eligibility for CJA-appointed counsel. *See, e.g., United States v. Wells*, 879 F.3d 900, 913 (9th Cir. 2018) (noting that "[t]he prosecution is typically precluded from participating in the determination of a defendant's eligibility for CJA-appointed counsel"); *United States v. Gonzalez*, 150 F.3d 1246, 1257 (10th Cir. 1998) ("[T]he CJA process is non-adversarial. It is the judge who protects the interests of the public fisc in a process that has traditionally been closed to the prosecution.").

Because I agree that the district court did not abuse its discretion in denying Bonds's motion, I join in affirming the decision below. That said, any one of the reasons discussed above should give us pause before answering the difficult and impactful question of whether the CJA allows district courts to appoint counsel for defendants who wish to pursue motions under 18 U.S.C. § 3582(c)(2). Taken together, I believe judicial restraint is warranted, at least in this case, and we should leave this question for another day.

HAMILTON, *Circuit Judge*, concurring. I join the per curiam opinion explaining why we affirm the denial of defendant Bonds' petition for early release under 18 U.S.C. § 3582(c)(2). For the reasons offered in Judge Lee's opinion, I am not convinced that this panel *needs* to decide whether the Criminal Justice Act of 1964 (CJA or "the Act"), 18 U.S.C. § 3006A, authorizes discretionary appointment of counsel in proceedings under § 3582(c)(2). Nevertheless, the conditional appointment of CJA counsel for Bonds in this court was designed to frame the question so that an answer might not be purely advisory.

If we were to reach the question, we should hold that the CJA gave the district court and this court discretionary authority to appoint counsel for Bonds. Where the CJA authorizes appointment of counsel, it applies "at every stage of the proceedings," from initial appearance through appeal, "including ancillary matters appropriate to the proceedings." § 3006A(c). This broad language easily extends to discretionary appointments for petitions under § 3582(c)(2).

Even if this broad language were deemed only ambiguous as applied to § 3582(c)(2), practical considerations, the purpose of the CJA, the history of its implementation by the courts, and a clear record of congressional acceptance all weigh in favor of continuing such appointments. To find that these appointments are not authorized by law would be a legal mistake and would impose disruptive burdens on courts, defendants, and prosecutors.

To explain, Part I addresses the text of the CJA and its relevant history. Part II addresses practical considerations, statutory purpose, the courts' actual practices, and congressional acquiescence.

I.  *The Text of the Criminal Justice Act*

The Criminal Justice Act establishes the legal framework for effective representation of indigent defendants in federal criminal cases. Counsel may be salaried employees of Federal Public Defender or Federal Community Defender offices, or private attorneys paid for particular cases. The core applications of the CJA are appointments of counsel to represent defendants facing criminal charges at trial or in plea negotiations and in sentencing and direct appeals. But the statutory language extends to appointments of counsel in matters beyond these core contexts, including "ancillary matters appropriate to the proceedings." 18 U.S.C. § 3006A(c).

A.  *The Current Text*

The question here — whether a court has discretion under the CJA to appoint counsel in a proceeding under § 3582(c)(2) — can be answered by looking at the current text of subsections (a) and (c) of § 3006A. Subsection (a) instructs all federal district courts to adopt a plan to furnish counsel for indigent defendants. Under paragraph (a)(1), each plan must provide for counsel as a matter of right to the following persons:

> (1) Representation shall be provided for any financially eligible person who —
>
>> (A) is charged with a felony or a Class A misdemeanor;
>>
>> (B) is a juvenile alleged to have committed an act of juvenile delinquency as defined in section 5031 of this title;
>>
>> (C) is charged with a violation of probation;

(D) is under arrest, when such representation is required by law;

(E) is charged with a violation of supervised release or faces modification, reduction, or enlargement of a condition, or extension or revocation of a term of supervised release;

(F) is subject to a mental condition hearing under chapter 313 of this title;

(G) is in custody as a material witness;

(H) is entitled to appointment of counsel under the sixth amendment to the Constitution;

(I) faces loss of liberty in a case, and Federal law requires the appointment of counsel; or

(J) is entitled to the appointment of counsel under section 4109 of this title.

As a practical matter, the most important category of eligible defendants in paragraph (a)(1) is those charged with felonies or Class A misdemeanors, in § 3006A(a)(1)(A). Bonds falls in that broad category.

Paragraph (a)(2) then authorizes discretionary appointments of counsel for other categories of indigent defendants and prisoners:

(2) Whenever the United States magistrate judge or the court determines that the interests of justice so require, representation may be provided for any financially eligible person who —

(A) is charged with a Class B or C misde-
meanor, or an infraction for which a sentence to
confinement is authorized; or

(B) is seeking relief under section 2241, 2254,
or 2255 of title 28.

Subsection (a) thus requires or permits appointment of
counsel in a wide range of cases and proceedings, and for a
wide variety of indigent defendants. But absent from para-
graphs (a)(1) and (a)(2) is any mention of 18 U.S.C. § 3582(c),
the statute under which Bonds seeks relief. That absence
raises the question whether counsel may be appointed under
the Act in § 3582(c) proceedings.

A closer look at the statute tells us that the better answer
is yes. While paragraphs (a)(1) and (a)(2) identify categories
of persons for whom appointment of counsel is either re-
quired or permitted, we must turn to subsection (c) for more
details on which proceedings are covered by the Act. Here is
the full text of subsection (c):

(c) Duration and substitution of appoint-
ments. — A person for whom counsel is ap-
pointed shall be represented at *every stage of the
proceedings* from his initial appearance before
the United States magistrate judge or the court
through appeal, *including ancillary matters appro-
priate to the proceedings*. If at any time after the
appointment of counsel the United States mag-
istrate judge or the court finds that the person is
financially able to obtain counsel or to make
partial payment for the representation, it may
terminate the appointment of counsel or

> authorize payment as provided in subsection (f), as the interests of justice may dictate. If at any stage of the proceedings, including an appeal, the United States magistrate judge or the court finds that the person is financially unable to pay counsel whom he had retained, it may appoint counsel as provided in subsection (b) and authorize payment as provided in subsection (d), as the interests of justice may dictate. The United States magistrate judge or the court may, in the interests of justice, substitute one appointed counsel for another at any stage of the proceedings.

18 U.S.C. § 3006A(c) (emphases added).

For this case, the key language authorizes representation "at every stage of the proceedings," from initial appearance through appeal, including "ancillary matters appropriate to the proceedings." This language is broad enough to reach petitions to seek reduced sentences under § 3582(c).

Section 3582(c) provides generally that a sentencing court may not modify a prison sentence after it is imposed, but with two major exceptions. The first is known as compassionate release and is authorized by § 3582(c)(1). The second, under § 3582(c)(2), allows sentence reductions on a case-by-case basis where the Sentencing Commission amends an applicable Guideline with retroactive effect. Federal Rule of Criminal Procedure 35(b) provides a third exception for defendants who provide substantial assistance after sentencing.

Proceedings under § 3582(c) and Rule 35(b) all fit comfortably under "ancillary matters appropriate to the proceedings." A petition under § 3582(c) is filed in the original sentencing court in the docket of the original criminal case. It does not challenge the validity of the existing sentence but seeks to modify it. The Supreme Court has explained that § 3582(c)(2) authorizes a "limited adjustment to an otherwise final sentence," not a "plenary resentencing." *Dillon v. United States*, 560 U.S. 817, 826 (2010). That characterization signals that a petition is neither a new proceeding nor a collateral attack on the final judgment. It is instead a limited resumption of the original sentencing proceeding, which is undisputedly covered by the CJA. Section 3582(c)(2) requires a court to consider the § 3553(a) factors just as it did at the original sentencing, showing that the proceedings build on the underlying criminal charge and sentence.[1]

Whether a particular "ancillary matter" is "appropriate" to original criminal proceedings and calls for appointment of counsel will naturally vary from case to case. Factors include the similarity of the legal and factual issues involved and the relevance of the matter to the ultimate disposition of the criminal charge. These are the factors the Administrative Office of the United States Courts (AO) has outlined for courts considering whether matters are ancillary and appropriate under

---

[1] This view of § 3582(c) proceedings as "ancillary" is consistent with dictionary definitions. See *United States v. Garcia*, 689 F.3d 362, 364 (5th Cir. 2012) (noting several dictionary definitions of "ancillary" and concluding that an ancillary proceeding must be "subordinate to or a subpart of a federal criminal prosecution"). A § 3582(c)(2) proceeding is a "subpart of" a federal criminal prosecution because it resolves a statutorily authorized adjustment to the sentence imposed in the original prosecution.

this provision.[2] See *In re Berger*, 498 U.S. 233, 234–35 (1991) (per curiam) (examining AO guidelines to determine attorney payment under the CJA). This approach makes sense. The relatedness of the proceedings is a fact-specific inquiry, and the broad language of the CJA allows courts to exercise sound discretion.

In addition to the "ancillary proceedings" language, subsection (c) grants courts wide latitude to appoint counsel during "any stage of the proceedings" when a defendant becomes indigent and a court determines that "the interests of justice may dictate." As Judge Scudder pointed out at oral argument, this provision functions as an "on/off switch" that may be flipped as a defendant's financial circumstances change. But as a purely textual matter, this broad language—which covers "any stage of the proceedings"—gives further support for discretionary appointments of counsel for § 3582(c) proceedings "as the interests of justice so require."

B. *The CJA's Statutory Evolution*

The history of the "ancillary matters appropriate to the proceedings" language helps show that it covers § 3582(c) and

---

[2] The AO explains: "In determining whether a matter is ancillary to the proceedings, the court should consider whether the matter, or the issues of law or fact in the matter, arose from, or are the same as or closely related to, the facts and circumstances surrounding the principal criminal charge." 2 CJA Guidelines § 210.20.30. It then lists six factors that courts should consider when determining whether a matter is "appropriate to the proceedings" and compensable under the CJA, including—among other things—whether the representation is "reasonably necessary" to protect a constitutional right, to contribute in some way to the defense of the principal criminal charge, or to aid in disposition of the principal criminal charge. *Id.*

other post-trial proceedings. The language was added in the 1970 amendments to the CJA. See Criminal Justice Act Amendments of 1970, § 1, Pub. L. No. 91-447. That was fourteen years before § 3582(c) was enacted in 1984. Those 1970 amendments were adopted in response to the so-called Oaks Report, which was requested by Congress to assess the CJA and recommend appropriate amendments.[3]

1.   *Confirming Payment for Post-Judgment Proceedings*

Two of the 1970 amendments are particularly illuminating. The first is Congress' decision to impose a cap on compensation "[f]or representation in connection with a post-trial motion made after the entry of judgment or in a probation revocation proceeding." Criminal Justice Act Amendments of 1970, § 1, Pub. L. No. 91-447; 18 U.S.C. § 3006A(d)(2) (1971).

This amendment shows that the CJA allows appointments for post-trial motions. The amendment was a response to administrative problems in compensating counsel for post-trial proceedings. The 1964 CJA imposed a $500 maximum for all felony trial proceedings. Criminal Justice Act of 1964, § 2, Pub.

---

[3] During the CJA's enactment in 1964, Congress requested a report by the Department of Justice assessing the need for a federal public defender office and reviewing "the operation of the proposals made in this legislation for the adequate representation in the Federal courts for the proper defense of defendants who are financially unable to obtain adequate representation." H.R. Rep. No. 88-1709 at 5–6 (1964). The Judicial Conference and the Department of Justice then asked Professor Dallin Oaks to assess the CJA's function and to recommend amendments. The Oaks Report is most remembered for facilitating creation of federal public defender and community defender organizations. But as described here, it also did much more. The Oaks Report can be found at Dallin H. Oaks, *The Criminal Justice Act in the Federal District Courts,* https://perma.cc/UR2C-6B3B (November 15, 1968).

L. No. 88-456. Professor Oaks was concerned that payment for post-trial proceedings may exceed that threshold, requiring complicated re-opening of closed case files. Oaks Report at 251. He accordingly recommended amendment to provide "a separate ceiling of $100 for compensation vouchers for representation at posttrial motions other than those made almost immediately after the conclusion of the trial or plea." *Id.* That proposal was adopted in the language quoted above, and it lives on in today's CJA, where § 3006A(d)(2) caps compensation at $1,500 for "any other representation required or authorized by this section."

This 1970 amendment reflected the long-accepted view that the CJA—from the outset—authorized appointment of counsel in post-trial proceedings. The Oaks Report explained that existing statutory language, which authorized appointment of counsel in "every criminal case," 18 U.S.C. § 3006A(b) (1964), already covered "any posttrial or even postappeal motion in a criminal case, so long as it is not in the nature of a separate (collateral attack) proceeding." Oaks Report at 251.[4] Congress then took affirmative action to specify a

---

[4] The government's brief asserts that the Oaks Report "recommended that the CJA 'be amended so that it makes no distinction between motions before and motions after appeal.'" Gov't Br. at 18. The passage in question actually (a) explained that post-appeal motions relating to the original criminal proceedings were already covered under the Act, (b) expressed concern that the First Circuit had misunderstood this principle in *Dirring v. United States*, 353 F.2d 519 (1st Cir. 1965), and then (c) suggested that *if Dirring* were correct, then the Act should be amended. Oaks Report at 250–51. Moreover, *Dirring* itself recognized only that the CJA did not *require* appointment of counsel post-trial and concluded that appointment "must rest in the discretion of the district court." 353 F.2d at 520. That view is consistent with the view expressed here.

compensation cap for representation in post-trial proceedings, showing that the question was not whether post-trial appointments were authorized but only how much appointed counsel could be paid for them.

2. *Authorizing Compensation in Ancillary Matters*

The other relevant 1970 amendment added the "ancillary matters" language that I focus upon here. It was a response to another issue that the Oaks report addressed: whether the CJA authorized payment for time spent seeking "a remedy that is technically outside the traditional scope of the criminal prosecution in order to seek realization of a right deemed substantial to the defendant and essential to the adequate defense of the charge." Oaks Report at 256. The Oaks Report referred to mandamus proceedings, petitions for habeas corpus seeking prompt arraignment, petitions for habeas corpus ad testificandum, and time spent seeking discovery as examples of such "ancillary" proceedings. The report concluded that the Act should be construed as already covering such proceedings *without* amendment. *Id.* Professor Oaks reasoned:

> Time spent bringing a habeas corpus proceeding to obtain some relief necessary to defense in a criminal case should be just as compensable as time spent trying to obtain the objective in a way not involving an independent proceeding. The only test should be whether the time was spent in seeking realization of a right deemed valuable in the defense of the criminal charge for which counsel was appointed.

*Id.*

Notwithstanding Professor Oaks' views about the scope of the original statutory language, Congress responded with an amendment. Rather than add to the specific lists of covered individuals or proceedings with language that would need to be updated as other statutes were amended, Congress addressed the more general issue by adopting the broad language authorizing appointed counsel to act in "ancillary matters appropriate to the proceedings." 18 U.S.C. § 3006A(c).

This broad language aligns with Professor Oaks' explanation that the CJA authorized the appointment of counsel in any proceeding arising from the criminal charge. See Oaks Report at 250 ("Where a motion arises out of the original criminal case it is not a 'new' criminal proceeding. Where the court sees fit to appoint counsel or where counsel already appointed continues to represent the defendant at any posttrial motions not in the nature of collateral attack, … counsel should be compensated under the [CJA]."). The express authority to appoint counsel in "ancillary matters appropriate to the proceedings" confirms that broad view.

C. *Case Law and Counterarguments*

Case law supports discretionary appointments for § 3582(c)(2) petitions. Most important, every circuit has understood that the CJA gives district courts discretion to appoint counsel to represent defendants in post-trial proceedings. See, e.g., *Dirring v. United States*, 353 F.2d 519, 520 (1st Cir. 1965) ("After final conviction the appointment of counsel must rest in the discretion of the court."); *United States v. Fleming*, 5 F.4th 189, 194 n.4 (2d Cir. 2021) ("The appointment of CJA counsel at this stage rests in the court's sole discretion."); *United States v. Curry*, 488 F. App'x 616, 618 n.5 (3d Cir. 2012) (explaining that a federal defender reviewed

Curry's § 3582(c)(2) motion but noting that "the District Court would not have abused its discretion by declining to appoint counsel"); *United States v. Reed*, 482 F. App'x 785, 786 (4th Cir. 2012) (finding no abuse of discretion in failure to appoint counsel for § 3582(c)(2) motion); *United States v. Whitebird*, 55 F.3d 1007, 1011 (5th Cir. 1995) ("[T]he decision whether to appoint counsel rests in the discretion of the district court."); *United States v. Manso-Zamora*, 991 F.3d 694, 697 (6th Cir. 2021) (appointing counsel for a § 3582(c)(1) motion and stating that "appointment of counsel in sentence reduction proceedings is discretionary"); *United States v. Blake*, 986 F.3d 756, 758 (7th Cir. 2021) ("District judges have discretion to recruit and sometimes appoint counsel for prisoners seeking post-judgment benefits."); *United States v. Meeks*, 971 F.3d 830, 834 (8th Cir. 2020) (reviewing denial of counsel for abuse of discretion); *United States v. Townsend*, 98 F.3d 510, 513 (9th Cir. 1996) ("[T]he decision whether to appoint counsel rests in the discretion of the district court"); *United States v. Olden*, 296 F. App'x 671, 674 (10th Cir. 2008) (reviewing denial of counsel for abuse of discretion); *United States v. Webb*, 565 F.3d 789, 795 n.4 (11th Cir. 2009) ("[C]ourts have the discretion to appoint counsel."); *United States v. Lafayette*, 585 F.3d 435, 437 (D.C. Cir. 2009) (appointing counsel for a pro se defendant's § 3582(c)(2) argument).[5]

---

[5] This court has not addressed specifically the "ancillary and appropriate" language in precedential opinions. Judge Ripple cited it in an in-chambers opinion on the duties of appointed counsel when a client asks counsel to file a petition for certiorari, but the opinion did not address issues pertinent to this case. See *United States v. Howell*, 37 F.3d 1207, 1209 (7th Cir. 1994) (Ripple, J., in chambers).

Those opinions do not explain their conclusions on this point, however, and the government cites several cases from other circuits to argue that § 3582(c)(2) proceedings are not "ancillary" to the original criminal proceedings. Gov't Br. at 17, citing *Miranda v. United States*, 455 F.2d 402, 405 (2d Cir. 1972), supplemented, 458 F.2d 1179 (2d Cir. 1972); *Whitebird*, 55 F.3d at 1010; and *United States v. Reddick*, 53 F.3d 462, 464 (2d Cir. 1995). None offer persuasive support for the government on the point at issue here.

In *Miranda*, the Second Circuit considered whether an earlier version of the CJA *required* appointment of counsel in federal habeas proceedings under 28 U.S.C. § 2255. The court held that the Act did not require appointment of counsel for the habeas proceeding because the plain language of the statute made clear that "if the interests of justice do not so require, free counsel … may be denied on a § 2255 appeal."455 F.2d at 404, citing 18 U.S.C. § 3006A(g) (1971) (authorizing appointment of counsel under 28 U.S.C. § 2255 when "the interests of justice so require"). The court went on to clarify that "collateral attacks on a judgment" are not "ancillary matters" under the statute and that appointment of counsel was therefore not *required* in federal habeas proceedings.

The *Miranda* holding was not controversial then and is not in dispute now. At the time, subsection (g) explicitly granted courts discretion to appoint counsel in § 2255 proceedings "when the interests of justice so require." 18 U.S.C. § 3006A(g) (1971). Since 1986, that discretion has been found in § 3006A(a)(2)(B). But *Miranda* said nothing about proceedings like § 3582(c) that emerge from the initial criminal charge. In fact, *Miranda* cited the CJA's history to clarify that "[m]any times remedies technically outside the scope of the trial

proper may be necessary" to defend against the principal criminal charge, and that such proceedings *are* properly covered as "ancillary matters." 455 F.2d at 404–05, citing H.R. Rep. 91-1546 (1970), printed at 1970 U.S. Code Cong. & Adm. News, p. 3989. *Miranda* thus actually supports the view that proceedings like § 3582(c)(2) are related to the original criminal charge and are "ancillary" under § 3006A(c).

More recently, in *Reddick* and *Whitebird*, the Second and Fifth Circuits evaluated defendants' arguments that the CJA gave them a statutory *right* to counsel in § 3582(c)(2) proceedings. Both courts rejected the argument based in part on the conclusion that § 3582(c)(2) proceedings were not "ancillary matters appropriate to the proceedings" that required appointment of counsel. The Second Circuit in *Reddick* rejected the claim based in part on the "intolerable" burden this would place on CJA attorneys, who would have to stand like sentinels "responsible in perpetuity for all former clients." *Reddick*, 53 F.3d at 464. The *Reddick* court also relied on *Dirring v. United States*, 353 F.2d 519, 520 (1st Cir. 1965), in which the First Circuit rejected a convicted defendant's claim that the then-brand-new CJA required the district court to appoint counsel for his post-appeal motion for a new trial.

The key point is that *Miranda*, *Whitebird*, *Reddick*, and *Dirring* all rejected claims that defendants were *entitled* to appointment of counsel in their post-appeal challenges to their convictions or sentences. That's not the question here, which is whether a court *may* appoint counsel for this § 3582(c) proceeding. In fact, *Reddick*, *Whitebird*, *Miranda*, and *Dirring* all said clearly that appointment of CJA counsel in those cases was left to the court's discretion, as I contend. See *Reddick*, 53 F.3d at 465 ("The provision of counsel for such motions

should rest in the discretion of the district court."); *Whitebird*, 55 F.3d at 1011 ("The appointment of counsel in these instances is a matter within the sound discretion of the district court."), quoting *Burrell v. United States*, 332 A.2d 344, 347 (D.C. App. 1975); *Miranda*, 458 F.2d at 1182 n.2 (inviting counsel to apply for compensation under the CJA for representation in a § 2255 proceeding); *Dirring*, 353 F.2d at 520 ("After final conviction the appointment of counsel must rest in the discretion of the court.").

To be sure, *Reddick* and *Whitebird* said that § 3582(c)(2) proceedings were not "ancillary" within the meaning of § 3006A(c), but they said that in the course of holding only that appointment was not *required*. I do not disagree with the results of those decisions. Since they left the appointment of counsel to the discretion of the court, those portions of the opinions should be understood better in terms of the discretion inherent in a determination about when a particular proceeding is "appropriate to the proceedings."

A different view of the statutory text is explained in Judge Scudder's opinion, which offers two main textual arguments to reject the view expressed here. That opinion asserts first that the word "including" imposes a time limit for CJA appointments (ending when a direct appeal ends) and second that my view turns § 3006A(a)(1) into surplusage. Neither argument is persuasive.

First, focus on the text of § 3006A(c): "A person for whom counsel is appointed shall be represented at *every stage of the proceedings* from his initial appearance before the United States magistrate judge or the court through appeal, *including ancillary matters appropriate to the proceedings*." Judge Scudder reads the word "including" to require that any representation

in an "ancillary matter" occur in the time identified in the preceding phrase—initial appearance through appeal. That reading is plausible but not inevitable. The better reading sees "including ancillary matters appropriate to the proceedings" as modifying the subject of the sentence: "Every stage of the proceedings." This reading recognizes a broader application to proceedings even before an initial appearance and after trial and/or appeal, consistent with the statutory evolution outlined above, and avoids odd gaps in coverage.

If the statutory phrasing prohibited appointment before initial appearances and after appeal, those limits would conflict with the rest of the statute. CJA appointments are often required before an accused's initial appearance in court. For example, the Act requires appointments for persons "under arrest, when such representation is required by law." § 3006A(a)(1)(D). (Think custodial interrogation and line-ups for identification.) After conviction, a defendant will need counsel in a sentencing-reduction process under Rule 35(b). In addition, appeals can sometimes last for years. Nothing in § 3582(c) prevents a defendant from seeking relief due to changed circumstances (a new illness, a pandemic, etc.) while the appeal is pending.[6]

It would be at least odd to say that a court could appoint counsel for a Rule 35(b) motion or a compassionate release petition while an appeal is pending but not after it has concluded. The placement of the phrase "from his initial

---

[6] I agree with Judge Scudder that a defendant may not use a § 3582(c) petition to argue that his sentence was legally erroneous. Post at 42, citing *United States v. Martin*, 21 F.4th 944, 945–46 (7th Cir. 2021). That does not mean the defendant could not pursue a proper petition for compassionate release on grounds separate from his appeal.

appearance … through appeal" is not strong enough to require these improbable consequences. In addition, no one has offered an explanation as to why Congress might have wanted to prohibit discretionary appointments for § 3582(c) petitions, let alone why it would have expressed that curious prohibition so indirectly. Such proceedings can present challenging legal and factual questions. We should infer that Congress intended § 3582(c) to operate without swamping federal courts and prosecutors with confusing pro se petitions, leaving courts and defendants unable to call on the expertise and energies of federal defenders.

The second textual counterargument is based on avoiding surplusage. Judge Scudder believes that my reading makes several portions of subsection (a) redundant. This argument is not persuasive, either generally or in its specifics.

First, the general preference for avoiding statutory surplusage is not a rigid rule, and there are good reasons not to apply it here. As this court has recognized, "the presence of some redundance is rarely fatal on its own to a statutory reading." *Schutte v. Ciox Health, LLC*, 28 F.4th 850, 862–63 (7th Cir. 2022), quoting *White v. United Airlines, Inc.*, 987 F.3d 616, 622 (7th Cir. 2021); see also *Territory of Guam v. United States*, 593 U.S. 310, 320 (2021) (rejecting effort to try to "avoid surplusage at all costs" (citation omitted)); *Rimini Street, Inc. v. Oracle USA, Inc.*, 586 U.S. 334, 346 (2019) ("Sometimes the better overall reading of the statute contains some redundancy."). Now-Justice Barrett observed in an opinion for this court that drafters of legal documents often consciously adopt a "belt-and-suspenders approach" to try to capture the universe. *Gadelhak v. AT&T Services, Inc.*, 950 F.3d 458, 465 (7th Cir.

2020), quoting Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 176–77 (2012).[7]

This skepticism about surplusage is especially warranted in this case. First, Judge Scudder suggests that interpreting the "ancillary and appropriate" language to cover post-trial proceedings would make redundant § 3006A(a)(1)(C) and (E), which *require* appointment of counsel when an indigent person is "charged with a violation of probation" or faces modification or revocation of supervised release. That is not

---

[7] An important empirical study found that drafters of legislation often "intentionally err on the side of redundancy" as a precautionary measure and as a response to political demands. Abbe R. Gluck & Lisa Schultz Bressman, *Statutory Interpretation from the Inside—An Empirical Study of Congressional Drafting, Delegation, and the Canons: Part I*, 65 Stan. L. Rev. 901, 934 (2013); see also Victoria Nourse, *Misreading Law, Misreading Democracy* 92–93 (2016) (explaining how Senate rules encourage redundant statutory language); Matthew R. Christiansen & William N. Eskridge, Jr., *Congressional Overrides of Supreme Court Statutory Interpretation Decisions, 1967–2011*, 92 Tex. L. Rev. 1317, 1448, 1469 (2014) (citing evidence that "repetition (i.e., surplusage) is typically what supporting institutions and groups want from the legislative process" and arguing that the anti-surplusage canon is "antidemocratic in a serious way"); William N. Eskridge, Jr., *The New Textualism and Normative Canons*, 113 Colum. L. Rev. 531, 579 (2013) (book review) ("[T]he rule against surplusage ... is especially problematic because the legislative process operates under the opposite assumption and so that canon will often thwart legislative deals rather than enforce them."); Brett M. Kavanaugh, *The Courts and the Administrative State*, 64 Case W. Rsrv. L. Rev. 711, 718 (2014) (observing that "members of Congress often want to be redundant" because they want "to make doubly sure about things," so courts "should be more careful" in applying the canon); Richard A. Posner, *Statutory Interpretation—in the Classroom and in the Courtroom*, 50 U. Chi. L. Rev. 800, 812 (1983) ("[A] statute that is the product of compromise may contain redundant language as a by-product of the strains of the negotiating process.").

correct. The argument overlooks the difference between a mandatory appointment and judicial discretion about the precise scope of the appointment. Congress could sensibly have decided to *mandate* appointment of counsel in many circumstances—see § 3006A(a)(1)—and to *allow* for it in others, including via blanket language permitting appointment in ancillary proceedings. The two provisions do different things. Paragraph (a)(1) reflects a legislative judgment that certain proceedings *always* warrant appointment of counsel. Subsection (c) is drafted to reflect a little legislative humility. It recognizes that Congress could not anticipate all circumstances and gives the courts discretion to address other "ancillary proceedings" where appointment of counsel would be prudent, depending on the facts of the case. Nothing in the language of the statute requires us to nullify this sensible legislative flexibility, which we can easily read to reach the later enactment of § 3582(c), without having required further amendment to the CJA itself.

My reading also does not make subparagraph (a)(2)(B) redundant. It expressly authorizes discretionary appointments of counsel for prisoners "seeking relief under section 2241, 2254, or 2255 of title 28," the habeas corpus statutes. Judge Scudder argues that if pursuit of a reduced sentence under § 3582(c) is an "ancillary matter appropriate to the [initial criminal] proceedings," subsection (a)(2)(B) becomes surplusage, apparently on the theory that a habeas corpus petition would also qualify as an "ancillary matter."

The argument has some superficial appeal, but it is not persuasive. First, it is not clear that a habeas petition would even qualify as an "ancillary" matter. Habeas petitions are not extensions of the original criminal prosecutions. They are

handled instead as new civil matters, and they have long been understood as "collateral" challenges to the original judgments. On these grounds, courts have found that habeas proceedings are not "ancillary" to the original proceedings.[8]

In fact, habeas petitions need not be heard in the sentencing courts. Section 2254 petitions are brought by state prisoners and are not even arguably ancillary to any prior federal proceedings. Section 2241 petitions are heard where the prisoner is being held, regardless of where he was sentenced.

On the practical side, habeas petitions provide a good example of a situation calling for legislative enactment of both belts and suspenders. Habeas petitions are filed in large numbers and in a more or less constant flow.[9] Given these practical considerations and doubts about whether habeas petitions are "ancillary," Congress could understandably decide that an express grant of discretionary authority to appoint counsel was a worthwhile amendment to the CJA in 1970. See Criminal Justice Act Amendments of 1970, § 1, Pub. L. No. 91-447.

---

[8] See, e.g., *Miranda*, 455 F.2d at 404 (explaining that "collateral attacks upon a judgment" under § 2255 are not "ancillary"); *In re Lindsey*, 875 F.2d 1502, 1508 (11th Cir. 1989) (state collateral proceedings are not ancillary because term is "limited to proceedings comprehended within the action for which the appointment was made").

[9] In 2021, prisoners filed 15,354 "general" petitions for habeas corpus in federal courts; 2022 saw 13,112; and 2023 saw 14,154. See U.S. Courts, Federal Judicial Caseload Statistics Tables 2022, Publication C-2, https://www.uscourts.gov/statistics-reports/federal-judicial-caseload-statistics-2022-tables; U.S. Courts, Federal Judicial Caseload Statistics Tables 2023, Publication C-2, https://www.uscourts.gov/statistics-reports/federal-judicial-caseload-statistics-2022-tables.

To sum up my view of the statutory text, "ancillary" and "appropriate" give courts discretion to determine when certain proceedings might be "appropriate" and when counsel should be appointed. That discretionary authority does not end with a final resolution of a conviction, with or without a direct appeal. This is not to say that all or even most § 3582(c)(2) proceedings must have counsel. The answer to whether a proceeding is "appropriate" to the underlying criminal proceeding and whether appointment is prudent will depend on facts. Finally, even if this explanation of the text is not persuasive to all readers, the CJA is at the very least ambiguous as to whether a court may appoint counsel in a § 3582(c) proceeding as an exercise of its discretion. There is no express prohibition, and such an exercise of discretion is permissible under § 3006A(c).

II.  *Practical Considerations — Purpose, Practice, and Congressional Acquiescence*

If the statutory text alone were not sufficiently persuasive, practical consequences, the purpose of the CJA, the uniform or nearly uniform practices of courts, and congressional acquiescence all point toward continuing to allow discretionary appointment of counsel under the CJA in § 3582(c) proceedings.

A.  *Practical Consequences and Statutory Purpose*

The most salient practical points here are (a) that retroactive guideline amendments can cause § 3582(c)(2) motions to be filed in large waves that can overwhelm courts and prosecutors, and (b) that proceedings under § 3582(c)(2) can present complex factual and legal issues for parties to litigate and courts to resolve. Our adversarial system functions much

better with counsel on both sides, regardless of whether the Sixth Amendment requires counsel in the particular proceeding.

Over the last twenty years, the Sentencing Commission has issued four major retroactive amendments: Amendment 706 (the 2007 Crack Cocaine Amendment); Amendment 750 (the 2010 Fair Sentencing Act Amendment); Amendment 782 (the 2014 "Drugs Minus Two" Amendment); and – most recently and at issue in this appeal – Amendment 821 (modifying criminal history calculations).

Amendment 821 was given retroactive effect on February 1, 2024. By the end of June 2024, courts had received 17,157 motions based only on that retroactive amendment. United States Sentencing Comm'n, *Part A of the 2023 Criminal History Amendment Retroactivity Data Report*, https://perma.cc/LQF3-RWKV (July, 2024); United States Sentencing Comm'n, *Part B of the 2023 Criminal History Amendment Retroactivity Data Report*, https://perma.cc/HMN5-V4M9 (July, 2024). The three earlier amendments produced similar waves. See, e.g., United States Sentencing Comm'n, *2014 Drug Guidelines Amendment Retroactivity Data Report*, https://perma.cc/GPW8-P84Q (2021 report noting a whopping 50,998 motions filed under the 2014 Drugs Minus Two amendment).

That's why many district courts have entered standing orders authorizing appointment of CJA counsel to assist with smooth resolution of those motions. For example, Bonds' counsel was appointed under the Northern District of Indiana's General Order No. 2023-32, which generally appoints counsel in "all cases arising under" § 3582(c)(2) and Amendment 821. The order explained that "it is in the interest of judicial economy that consistent procedures be followed in the

handling of requests seeking a reconsideration of a sentence pursuant to Amendment 821."

The scope of § 3582(c)(2) proceedings can make the presence of capable defense counsel very helpful to the courts and prosecutors, as well as to defendants. A defendant has a limited right to develop an evidentiary record to support a § 3582(c)(2) petition. To be sure, a judge is entitled to rely on prior resolution of factual disputes when resolving motions under § 3582(c)(2). *United States v. Neal*, 611 F.3d 399, 401 (7th Cir. 2010). But when a judge assesses the application of retroactive amended guidelines based on facts outside the existing record, the defendant is "entitled to an opportunity to dispute contestable factual propositions that affect the sentence." *Id.* at 402, citing U.S.S.G. § 6A1.3.

This need for counsel arises often when judges consider defendants' time in custody as part of the analysis under § 3582(c)(2). Commentary accompanying U.S.S.G. § 1B1.10 – the policy statement that lists retroactive amendments – specifies that courts may consider "post-sentencing conduct" in deciding whether to reduce a particular defendant's sentence. § 1B1.10 app. n. 1(B)(iii). Another policy statement provides: "When any factor important to the sentencing determination is reasonably in dispute, the parties shall be given an adequate opportunity to present information to the court regarding that factor." U.S.S.G. § 6A1.3. When post-sentencing conduct is at issue, courts *must* give defendants an opportunity to present relevant information. See 18 U.S.C. § 3582(c)(2) (authorizing sentence reductions only when such a reduction is "consistent with applicable policy statements"); *Neal*, 611 F.3d at 402 (finding limited right to develop record regarding "adjudicatory" facts not part of the sentencing record and not

"general public knowledge"). This right underscores the value of counsel in developing a factual record to assist courts in making liberty determinations.

Bonds' case illustrates the point. After Bonds sought a reduction in his sentence, the government submitted prison disciplinary logs indicating that – in its view – "So far, prison has not adequately deterred Bonds from behaving poorly." ECF No. 33 at 10. The district court denied Bonds' § 3582(c)(2) motion in part based on this evidence. ECF No. 35 at 2. This was not error, for the reasons explained in the per curiam opinion, but it highlights the importance of developing a factual record during § 3582(c)(2) proceedings. As we explained in *Neal*, a defendant is "entitled to an opportunity to contest propositions that affect how long he must spend in prison." *Neal*, 611 F.3d at 402. Bonds did not contest the government's version of events – but he would have faced an extraordinary uphill battle in making those arguments if he had to access prison disciplinary logs and contest the government's interpretation of the facts without counsel.

Section 3582(c)(2) provides incarcerated defendants with a unique opportunity to reduce their prison time based on updated Sentencing Guidelines. But to do so, they must frequently update the factual record with evidence not available at sentencing. This right, combined with the fact that § 3582(c)(2) motions typically come in massive waves, can overwhelm district courts without the assistance of counsel to identify and present meritorious arguments. The ability to appoint counsel under the CJA is crucial in making this system work. It also should go without saying that such appointments are consistent with the central purpose of the CJA, which is to see that defendants have effective representation

in adversarial criminal proceedings, for the sake of the defendant, the court, the prosecution, and the public.

B. *Widespread Practice and Congressional Acquiescence*

For the reasons explained above, I conclude that the text of the CJA authorizes discretionary appointment of counsel in § 3582(c)(2) proceedings, though it does not require appointment. At the very least, the text leaves room for reasonable minds to disagree about whether the statute authorizes such appointment. It therefore invites judicial interpretation regarding which proceedings are "ancillary," "appropriate," and covered by the statute. For those who consider the CJA's text ambiguous as applied to § 3582(c)(2) proceedings, the combination of widespread practice and Congress's long acceptance of appointments in these and other post-trial proceedings offers ample support for adopting the permissive interpretation offered here.

As a general matter in statutory interpretation, courts say that "Congress is presumed to be aware of judicial interpretations of its acts." *Tri-State Water Treatment, Inc. v. Bauer*, 845 F.3d 350, 355 (7th Cir. 2017), citing *Mississippi ex rel. Hood v. AU Optronics Corp.*, 571 U.S. 161, 169–70 (2014). That presumption might tend toward the heroic in many situations, but it gains force in situations like this one, where *every circuit has authorized the disputed practice for nearly sixty years*. See cases cited above at pages 19–20.

This circuit is one of those. See *Blake*, 986 F.3d at 758 ("District judges have discretion to recruit and sometimes appoint counsel for prisoners seeking post-judgment benefits."). The government cites early post-amendment cases to argue that the CJA does not authorize post-trial

appointment of counsel, but those cases are actually consistent with the view that the Act vests courts with discretion to do so. See *Burrell*, 332 A.2d at 347 n.6 (finding no right to counsel in a D.C. sentence-reduction proceeding, but stating: "This decision is not meant to affect any right appointed counsel may have to claim compensation under the Criminal Justice Act for motions filed after final conviction."); *United States v. Nevarez-Diaz*, 648 F. Supp. 1226, 1232 (N.D. Ind. 1986) (finding no right to counsel but citing several cases, including *Miranda* and *Dirring*, allowing for discretionary appointment).

The evolution of the statute further supports this understanding. As noted above, Congress amended the CJA in 1970 to authorize payment of counsel in post-trial proceedings. Pursuant to that authority, courts began appointing counsel in sentence-modification proceedings, including in the Supreme Court. See, e.g., *Chavez-Meza v. United States*, No. 17-5639, 585 U.S. 109, 111 (2018) (Supreme Court interpreted § 3582(c)(2) after argument from CJA counsel appointed by Supreme Court itself; docket showing order where Supreme Court appointed counsel). Congress has amended the statute several times since then, but it has not directed courts to stop this practice. See, e.g., Sentencing Act of 1987 at Section 19, Pub. L. No. 100-182; Sentencing Reform Act of 1984 at Section 223, Pub. L. No. 98-473; Criminal Justice Act Revision of 1986 at Section 102, Pub. L. 99-651. If these discretionary CJA appointments were contrary to Congress' intent, we should have seen some indication by now.

Instead, we have an unusually clear record of actual congressional knowledge and acquiescence. Every year, the Administrative Office of the U.S. Courts—which administers the

CJA—submits a request to Congress for judiciary-related funding, including for "defender services." Those requests describe the work of CJA attorneys seeking sentence reductions under § 3582(c)(2). See, e.g., AO, *FY 2022 Congressional Budget Request* 5.12, https://perma.cc/R4Z6-T4QS ("The Defender Services program must respond to changes in the U.S. Sentencing Guidelines."). This year is no different. The AO has submitted an appropriations request to Congress that explicitly accounts for Amendment 821 and notes that the amendment could affect nearly 19,000 sentences. AO, *FY 2025 Congressional Budget Request* 5.12, https://perma.cc/7UDL-P2TW. The AO *told Congress*: "Historically, FDOs have litigated the vast majority of retroactive sentencing guidelines cases." *Id.*

In other words, Congress has known for more than fifty years that courts have interpreted the CJA to allow appointment of counsel in sentence-reduction proceedings generally, and for decades in § 3582(c)(2) proceedings specifically. If Congress disapproved of this nearly universal practice, it has all the powers of the purse to force a change. It has not made any effort to do so. The statutory text does not require us to stop this widespread, sensible, and practical approach. We should not inflict this disruption on the courts, the federal defender community, defendants, or prosecutors.

SCUDDER, *Circuit Judge*, concurring. This appeal presents two consequential questions. On the first, I agree with my colleagues that the district court did not abuse its discretion in denying Clarence Bonds's motion under 28 U.S.C. § 3582(c)(2) for a reduced sentence based on Amendment 821 to the U.S. Sentencing Guidelines. The second question affects Bonds too but also carries substantial ramifications for many other federal prisoners untrained in law and desiring to pursue sentencing reductions under § 3582(c). The question is whether the Criminal Justice Act authorizes the appointment of counsel to assist federal prisoners in such an effort. While it pains me to say so, the answer is no under the plain and unambiguous language of 18 U.S.C. § 3006A(a).

## I

The proper beginning point is procedural. Our affirming the district court's denial of Bonds's § 3582(c)(2) motion does not moot or otherwise obviate the need to decide the appointment-of-counsel question. The two questions are related in that they both involve and affect Clarence Bonds. But they are not so intertwined that resolving the first eliminates the need to reach and answer the second, either as a matter of law or discretion.

After Bonds's counsel in the district court withdrew, we granted outgoing counsel's request to appoint new counsel to represent Bonds on appeal—Central District of Illinois Federal Defender Thomas Patton. The appointment was provisional, subject to the appeal itself resolving whether the Criminal Justice Act authorized the appointment. So we asked the parties to brief the question, as this issue has remained unsettled for years in our case law and is one of exceptional importance to federal prisoners (and the federal defender

community), especially given the floodtide of § 3582(c) motions prisoners filed during the COVID-19 pandemic and in response to retroactive amendments to the Sentencing Guidelines.

The government challenged the appointment, thereby creating adversity between the parties on the question. That adversity remains. Nothing about the panel's conclusion that the district court acted within its discretion in denying Bonds's § 3582(c) motion causes the statutory question to disappear. The government remains of the view that we had no authority under the CJA to provisionally appoint Mr. Patton to represent Bonds. And Bonds presses an opposing view. That leaves us with a concrete and unresolved dispute between adverse parties.

Sidestepping the statutory issue because it first surfaced on appeal—when Bonds's prior counsel withdrew, and he requested the appointment of new counsel—is not much an option. We often decide questions that arise in the first instance on appeal. That the controversy before us arose on appeal and in response to a provisional order of the court is of no moment.

Do not lose the bigger picture either. How we answer the appointment-of-counsel question matters to Bonds even though we are affirming the district court's denial of his § 3582(c) motion. Suppose Bonds wants to seek panel rehearing or to ask the full court to consider the merits of the district court's denial of his motion. Surely he would want Mr. Patton to continue to represent him. And I see no reason why our provisional appointment of Mr. Patton would not allow him to represent Bonds in those rehearing proceedings. In no way is the statutory issue made moot—and definitely not as a

matter of subject matter jurisdiction—by our affirming the district court's § 3582(c) merits ruling. Regardless, our own experience shows that the issue recurs time and again. It is time we review it and stop kicking the can.

## II

### A

All agree that the Sixth Amendment did not provide Clarence Bonds a right to counsel to assist with his § 3582(c) sentence-reduction motion. Whether a federal court can appoint counsel in such circumstances requires construction of the Criminal Justice Act. The statute's plain language answers the question.

By its terms, the Act directs each federal district court, with the approval of the judicial council of the circuit, to create "a plan for furnishing representation for any person financially unable to obtain adequate representation in accordance with [§ 3006A]." 18 U.S.C. § 3006A(a). From there Congress authorizes appointments in two categories of circumstances—one where district courts must appoint counsel for financially qualifying defendants and the second where appointments are discretionary.

The mandatory-discretionary distinction is clear from the Act's text. Subsection (a)(1) of § 3006A states that "[r]epresentation shall be provided for any financially eligible person" fitting within one of ten enumerated circumstances—specifically, any qualifying person who:

> (A) is charged with a felony or a Class A misde-
> meanor;

(B) is a juvenile alleged to have committed an act of juvenile delinquency as defined in section 5031 of this title;

(C) is charged with a violation of probation;

(D) is under arrest, when such representation is required by law;

(E) is charged with a violation of supervised release or faces modification, reduction, or enlargement of a condition, or extension or revocation of a term of supervised release;

(F) is subject to a mental condition hearing under chapter 313 of this title;

(G) is in custody as a material witness;

(H) is entitled to appointment of counsel under the sixth amendment to the Constitution;

(I) faces loss of liberty in a case, and Federal law requires the appointment of counsel; or

(J) is entitled to the appointment of counsel under section 4109 of this title.

*Id*. § 3006A(a)(1)(A)–(J).

For its part, § 3006A(a)(2) authorizes—but does not require—appointments in two circumstances: Class B or C misdemeanors in which the alleged offender faces a potential custodial sentence and proceedings in which a person is seeking post-conviction relief under 18 U.S.C. §§ 2241, 2254, or 2255. We know appointments under subsection (a)(2) are discretionary because Congress provided that a court "may" appoint counsel in these circumstances if "the court

determines that the interests of justice so require." *Id.* § 3006A(a)(2)(A)–(B).

A third provision within § 3006A also informs the analysis. Subsection (c) provides direction on the duration and scope of the mandatory and discretionary appointments authorized by subsections (a)(1)–(2). Congress wrote the relevant language in subsection (c) this way:

> (c) DURATION      AND      SUBSTITUTION      OF APPOINTMENTS.—A person for whom counsel is appointed shall be represented at every stage of the proceedings from his initial appearance before the United States magistrate judge or the court through appeal, including ancillary matters appropriate to the proceedings.

*Id*. § 3006A(c).

## B

With the pertinent statutory language on the table, a few observations are clear.

*First*, everyone agrees that subsection (a)(1)'s listing of the ten circumstances requiring the appointment of counsel contains no reference to defendants seeking a reduced sentence under § 3582(c).

*Second*, everyone likewise recognizes that the circumstances permitting discretionary appointments under subsection (a)(2) do not include § 3582(c) motions.

*Third*, subsection (c) tells us that authorized appointments of counsel extend to "every stage of the proceedings from [a defendant's] initial appearance … through appeal, *including* ancillary matters appropriate to the proceedings." 18 U.S.C.

§ 3006A(c) (emphasis added). This acts as a clarifying provision. Many subsection (a) appointments need no clarification. Subsection (a)(1)(D), for instance, requires appointment of counsel when a person is under arrest and such representation is required by law. Implicit in this provision is that the appointment lasts for as long as required by law—for example, throughout a custodial interrogation.

But not all subsection (a) appointments are so self-explanatory. In those cases, subsection (c) supplies guidance on the appointment's duration and scope. The provision begins by specifying the duration of appointments—from initial appearance through appeal. It then explains that the appointment extends to certain ancillary proceedings. But its use of the word "including" is important. That word works in tandem with the durational language immediately preceding it to limit the time period for appointed representation in such ancillary matters. Put another way, "including" is a relational term, meaning "to contain between or within." *Include, Merriam Webster's* (11th ed. 2009). It makes plain that any representation in an "ancillary matter" must relate to the durational period expressly identified in subsection (c)—the period of initial appearance through appeal. Congress, in short, did not say that authorized appointments cover the period from initial appearance through appeal *and* any attendant ancillary matters appropriate to an underlying proceeding.

These observations combine to resolve the question presented. Congress neither required the appointment of counsel in § 3582(c) proceedings under subsection (a)(1) nor authorized it as a discretionary matter under subsection (a)(2). And, for its part, subsection (c) does not supply any supplemental

appointment authority over any ancillary proceedings arising after an appeal—when all § 3582(c) proceedings arise. I know of no authority authorizing a defendant to pursue a reduced sentence under § 3582(c) during the pendency of a direct appeal. See *United States v. Martin*, 21 F.4th 944, 945–46 (7th Cir. 2021) (explaining that a defendant could not "use a motion for compassionate release" under § 3582(c)(1)(A)(i) to challenge an alleged sentencing error while his direct appeal was "under review").

We adopted this exact construction of the CJA in *United States v. Foster*, 706 F.3d 887, 888 (7th Cir. 2013) (concluding that "[t]he Criminal Justice Act does not supply the necessary permission to pay a lawyer from the public fisc" in § 3582(c)(2) proceedings). And contrary to Judge Hamilton's suggestion, no circuit has examined this issue in any detail, let alone expressly held that the CJA authorizes discretionary appointments of counsel in § 3582(c) proceedings. See Op. J. Hamilton at 19–20. I would adhere to *Foster* here and utilize our internal Rule 40(e) process to make clear that any contrary decisions do not reflect the law of the circuit. See, *e.g.*, *United States v. Guerrero*, 946 F.3d 983, 985 (7th Cir. 2020) ("*Foster* holds that district courts are not *required* to appoint counsel [in § 3582(c)(2) proceedings], but it does not *prohibit* them from doing so.") (emphasis in original)).

The analysis ends there. Where, as here, statutory language answers the question, the Supreme Court has given us clear direction—stop. See, *e.g.*, *Nat'l Ass'n of Mfrs. v. Dep't of Def.*, 583 U.S. 109, 127 (2018); *Mohamad v. Palestinian Auth.*, 566 U.S. 449, 458–59 (2012); *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 98 (2003). Absent statutory ambiguity, we have no authority to look beyond the language Congress enacted into law to

resolve the case before us. Any different answer must come from Congress. This is the way the Constitution divided power among the three branches of government.

C

To his credit, Bonds in no way questions the analytical approach federal courts generally take to resolving matters of statutory interpretation. He even takes care to recognize that the plain and differing language of § 3006A(a)(1)–(2) goes most of the way to resolving the question presented. But most of the way is not all the way, and Bonds, much like the approach taken by Judge Hamilton, urges us to see ambiguity within the CJA and to resolve that ambiguity by resorting to the statute's history and the doctrine of congressional acquiescence to conclude that § 3006A(a)(1) and (c) permit discretionary appointments in § 3582(c) proceedings.

I cannot get there. Foremost, I see no way to read subsection (a)(1) as conferring discretionary appointment authority. In no uncertain terms, Congress stated that "[r]epresentation shall be provided" in ten circumstances—not one of which is a § 3582(c) proceeding.

Nor do I see subsection (c) as helping Bonds. Perhaps it is somehow possible to construe a § 3582(c) motion as an "ancillary matter" to a felony criminal proceeding (within the meaning of subsection (a)(1)(A)). But see *United States v. Whitebird*, 55 F.3d 1007, 1010 (5th Cir. 1995) ("[A]s a matter of common sense, a motion to modify a sentence pursuant to § 3582(c)(2), which can be filed long after conviction, is too far removed to be considered 'ancillary' to the criminal proceeding."). And even if we go a step further and interpret subsection (c)—through Congress's use of the formulation

"ancillary matters *appropriate to* the proceedings"—as affording a court some degree of discretionary appointment authority, the appointment cannot extend to a proceeding arising beyond the finality of a direct appeal. We know that because Congress's use of "including" in subsection (c) is modified by its preceding durational language—"initial appearance … through appeal." Here, Bonds filed his § 3582(c) motion long after his direct appeal had concluded. In no way, then, can Bonds's § 3582(c) proceeding be considered an "ancillary matter appropriate to" his original felony prosecution included in the period between his initial appearance and appeal.

There is more. To accept Bonds's and Judge Hamilton's conclusion that subsections (a)(1) and (c) are ambiguous is to accept serious tension with the overall structure of the CJA, and, more specifically, with multiple subsection (a) appointments. It is mighty odd for Congress to itemize a lengthy list of circumstances mandating the appointment of counsel, only then to use a durational provision to expand the list and make other appointments discretionary.

A closer look at subsection (a) only amplifies the tension. Recall that subsection (a)(2)(B) authorizes discretionary appointments in post-conviction proceedings under 28 U.S.C. §§ 2241, 2254, and 2255. If Bonds and Judge Hamilton are right that a pursuit of a reduced sentence under § 3582(c) is an "ancillary matter appropriate to the [initial criminal] proceeding[]," subsection (a)(2)(B) sure seems redundant. Put another way, if subsections (a)(1) and (c) combine to confer the discretionary authority necessary for appointments in any post-direct appeal proceedings ancillary to the original criminal proceeding with no matter to when those proceedings

occur, Congress had no need to add subsection (a)(2)(B) habeas appointment authority to the CJA.

The same is true for subsections (a)(1)(C) & (E)—Congress would have no need to carve out appointments in proceedings where a defendant faces a violation of supervised release or probation because those proceedings surely relate to the defendant's original sentencing. See 18 U.S.C. § 3006A(a)(1)(C) & (E). We should avoid interpreting the CJA that way. See *Hibbs v. Winn*, 542 U.S. 88, 101 (2004) ("A statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant ….") (quoting 2A Norman J. Singer, *Statutes and Statutory Construction* § 46.06 (rev. 6th ed. 2000)).

The analysis must stop there. For better or worse—and agree or disagree with its answer—Congress has resolved the question before us. Absent ambiguity, we have no license to resort to legislative history or other tools commonly used to resolve a lack of statutory clarity. See *McGirt v. Oklahoma*, 591 U.S. 894, 916 (2020) ("There is no need to consult extratextual sources when the meaning of a statute's terms is clear. Nor may extratextual sources overcome those terms.").

### III

Cases like this make judging hard. Congress has answered the question before us in a way that leaves courts with no authority to react to a federal prisoner's § 3582(c)(2) motion by appointing counsel, no matter how meritorious the motion seems to be and no matter how ill-equipped a prisoner to represent himself.

Nobody made this point better than the counsel we appointed on appeal to represent Bonds. Mr. Patton, a career

federal defender, told us with great clarity and conviction that nothing less than liberty hangs in the balance with § 3582(c) motions, with the appointment of counsel often being the dispositive factor between some chance of sentencing relief and no chance. It makes little sense, he added, that the very same Congress that authorized such relief under § 3582(c) would have intended the Criminal Justice Act to preclude appointments of counsel to assist a prisoner in those proceedings, especially given the complexity of today's federal sentencing law.

Truth be told, I think Mr. Patton has the practical reality 100% right. Yet no matter how many times I read the parties' briefs or review the Criminal Justice Act, I return to the same conclusion: the statute's language resolves the question, no matter how much I disfavor the answer. Congress did not authorize the provisional appointment of Mr. Patton to represent Bonds on appeal, and it is Congress alone the Constitution empowers to amend the statute. That precept has been clear for 200 years. See *Osborn v. Bank of United States*, 22 U.S. 738, 866 (1824) ("Judicial power is never exercised for the purpose of giving effect to the will of the Judge; always for the purpose of giving effect to the will of the Legislature; or, in other words, to the will of the law.").

In my respectful view, we have no choice but to hold that the Criminal Justice Act does not permit the appointment of counsel to assist federal prisoners with the pursuit of sentence reductions under § 3582(c).